Buckingham *v.* Riggs and Aertson.

---

THOMAS E. BUCKINGHAM *v.* RIGGS AND AERTSON.

The rigorous operation of the statute of 24th of February, 1844, which authorizes the sale of judgments for the payment of costs, upon the rights of non-resident creditors, demands that a defendant in a judgment claiming as a purchaser under its provisions, shall have done nothing in acquiring his right inconsistent with the principles of equity and good conscience; for if he can claim protection at all, it must be because he is an unfortunate debtor without the means to render full justice to his creditor, and he must have acted in good faith in becoming the purchaser at a fair public sale.

A defendant who purchases a judgment against himself and interferes to prevent bidders at the sale in order that he may obtain the judgment for a very small sum, will not be protected in his purchase.

This court has heretofore settled, that where a cause of action or right existed

previous to the passage of the act of limitations of 1844, the period of limitation therein prescribed commences from the psssage of that act:—*Held*, in this case that the action was not barred.

*Quære.* Does the statute which authorizes the sale of judgment for costs, warrant a sale without notice to a non-resident creditor who is the owner of the judgment; and had the legislature the power to give to the defendant in a judgment, the right to purchase it without the plaintiff's consent for a less amount than is due upon it?

ON appeal from the northern district chancery court at Fulton; Hon. Henry Dickinson, vice-chancellor.

This was a proceeding instituted against Thomas E. Buckingham in the chancery court, and the bill states that Riggs, Son and Aertson, at the October term, 1838, of the circuit court of the county of Monroe, recovered a judgment against Thomas E. Buckingham and Charles M. Weaver, for the sum of $2,025.33, together with costs of suit; that on the 3d day of September, 1839, a *fieri facias* was issued, founded upon said judgment, and returned by the sheriff of said county to the succeeding October term of said circuit court "no property found;" that on the 15th day of December, 1839, the said plaintiff sued out an alias writ of *fieri facias* on said judgment, which was also returned by the sheriff to the April term, 1840, "no property found;" that since the rendition of said judgment, Romulus Riggs has departed this life, and Charles M. Weaver has been discharged in bankruptcy; that said recovery is still due from said Buckingham, except the payments made in 1841, amounting to $2,100.61; that the said Thomas E. Buckingham, combining with others to defraud the complainants, although he owned and possessed property and effects, of value more than sufficient to pay all the costs in said suit, as also the balance due upon said judgment, fraudulently concealed the same from the complainants and the sheriff, and thereby caused said executions to be returned *nulla bona;* and procured such proceedings to be had, in the circuit court of Monroe county, as at the April term, 1844, for judgment to be had against the plaintiffs for costs, and that said recovery be sold to satisfy the same, when at the same time Buckingham owned and possessed property and effects of value more than

Buckingham *v.* Riggs and Aertson.

sufficient to pay said costs, and the balance due on said judgment; that on the 3d day of July, 1844, an order of sale to sell said recovery issued from the office of the clerk of the circuit court, and on the 21st of October, 1844, said recovery was offered for sale by the sheriff at public auction, and which was struck off to the defendant Buckingham, at the sum of ten dollars, but which was not paid by him to the sheriff, but if mistaken in this, the complainants submit to the court whether the defendants could purchase, being bound to pay debt and costs, having sufficient property concealed to do it; that at or before said bid, the defendant Buckingham had, by some arrangement, contract, or agreement with one James J. Standefer or others, not to bid against him for said recovery; that in consequence of said arrangement, the persons present at the sale did not bid, and who otherwise would have bid therefor; that said pretended purchase is fraudulent and void as to complainants; that complainants had no notice of the proceedings to sell said recovery, or they would have paid the costs; nor did they know the fact that at the time said executions were returned *nulla bona*, that the defendant Buckingham had property and effects more than sufficient to pay the recovery, and at the time of said judgment against the plaintiffs for costs, and said pretended purchase by Buckingham, he had and owned the same; all which had been fraudulently concealed by Buckingham, until they discovered the same just before filing the bill.

The bill prays that said pretended purchase be set aside, and that they have leave to have their execution at law, and for general relief.

The answer admits the recovery of the judgment, the time, the amount, the issuance, and return of *fieri facias*, as stated; insists that more than seven years have elapsed since the issuance of the last, and that the judgment is barred by the act of 24th of February, 1844; admits the discharge of Weaver, but insists that the defendant is the *bonâ fide* owner and purchaser thereof; admits that the order was obtained, and the judgment sold at the time stated, and purchased by defendant at ten dollars, which was paid shortly after to J. H. Buckingham, but denies that the order of sale was procured at his

instance; that thereby he became entitled to all the rights of the complainants in said judgment; denies expressly the making of any agreement with any person to prevent competition at said sale; states that at the time of the sale, he owed more money than he could pay; claims the benefit of a demurrer to the bill, and relies upon the statute of limitations.

The testimony established that Buckingham, not only at the time of the return of the executions *nulla bona*, but from thence up to the sale of said judgment, had ample effects concealed, of value more than sufficient to pay said judgment and costs. James J. Standefer proves expressly the agreement made with Buckingham, by which he was induced not to bid for the judgment, and a compliance upon the part of Buckingham afterwards with that agreement.

The vice-chancellor set aside the sale, from which decree the defendant appealed.

*D. C. Glenn* for appellant.

In this case we rely on the seven years' limitation of the act of February, 1844. The judgment was rendered on the 23d of October, 1838. An execution was issued on it 3d of September, 1839. An alias was issued the 15th of December, 1839. This was the last effort made to enforce the judgment. The bill was filed the 28th of March, 1849, nearly ten years after the issuance of the last execution. The plain letter of the act is, that no proceedings shall be had to enforce a judgment, "after the expiration of seven years next after the date of such judgment." There is no fraud shown either in the concealment of property upon which the executions issuing on the judgment might have been levied, or any fraud in the sale or purchase.

*Goodwin* and *Sale* for appellees.

1. The purchase by defendant of complainants' judgment against him should be set aside, for his fraud in concealing means more than adequate to satisfy the balance due upon the recovery (at least the costs) and then purchasing himself. He does not occupy towards the plaintiff in that judgment, the same position a third person would; for he was the cause of the

necessity to sell, upon a false, though legal appearance of facts, his supposed insolvency. The statute did not contemplate his paying off his judgment by withholding his means, till judgment sold, and then developing them in a purchase of it for a trifle.

2. Also, upon the ground of the defendants' fraud in procuring others not to bid against him at the sale, which is fully proved by Standefer.

3. The act of 24th of February, 1844, did not commence running till its date, (Hutch. Co. 832, § 18,) if it had any application. It does not apply in this case, because the bill was filed within seven years after its passage.

4. The statute of limitations will only run against a fraud from the time of a full and complete discovery, but does not run against them to whom it is not discovered. 3 Desa. 223, 238, cited in 1 Barb. & Harr. Dig. 564, No. 39; 2 Story, Eq. Jur. § 1521, a ; 7 Johns. Ch. R. 122.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill filed in the vice chancery court at Fulton, by the appellees, to set aside the sale of a judgment obtained by them against the appellant in the circuit court of Monroe county, in the year 1838, and which was ordered by that court to be sold for the payment of costs, in virtue of the act of 24th of February, 1844, and was purchased by the appellant.

The grounds of relief set up in the bill are, that at and before the time of the sale, the appellant owned property and effects, and had the means under his control amply sufficient to pay the costs and the amount then due on the judgment, but that he fraudulently concealed and withheld those means from the sheriff, and thereby caused several executions in the judgment to be returned *nulla bona ;* and further, that when the judgment was sold, the appellant interfered and induced other persons not to bid for the judgment at the sale, and in consequence thereof, that he became the purchaser of it for the sum of ten dollars, the judgment being for $2,025.33, with interest from October, 1838, all of which was due except the sum of $2,100, which had been paid upon it.

The answer denies both these charges, and insists that he

obtained a good right to the judgment by his purchase; claims the benefit of a demurrer to the bill, and relies generally on the statute of limitations.

The proof shows clearly, that when the sale of the judgment was about to be made, a third party, against whom the appellant had a judgment, intended to bid for it, and that the appellant induced him not to bid, by agreeing that if he would not bid, the appellant would enter satisfaction of the judgment which he held. This agreement was carried out, and the appellant became the purchaser of the judgment, and without this arrangement, the other person would have bid for the judgment.

The proof also shows that the appellant had, at the time of the purchase, and between that time and the date of the judgment, property and effects sufficient to pay the amount of the balance of the judgment, some of which was in his possession openly, and other portions of it were not in a situation to be taken in execution.

On the final hearing, a decree was made setting aside the purchase of the appellant, and awarding execution upon the judgment to the appellees; from which decree this appeal is taken.

The provisions of the statute under which the appellant became the purchaser of the judgment in question, are certainly harsh and oppressive upon the rights of non-resident plaintiffs, whose rights are divested without notice; and this is especially the case, where the defendant in the judgment has become the purchaser, and thereby discharged a large debt by paying but a small part of it. It is a question for grave consideration whether the statute warrants a sale without notice to a non-resident creditor, and whether the legislature had the power to give to the defendant in a judgment the right to purchase it without the plaintiff's consent, for a less amount than is due upon it, and thereby destroy the plaintiff's right of complete satisfaction. But these points, though they may arise upon the record in this case, are not presented by counsel for decision; and we therefore give no opinion upon them on the present occasion.

The rigorous operation of the statute upon the rights of non-resident creditors, demands that a defendant in a judgment,

claiming as a purchaser under its provisions, should have done nothing in acquiring his right inconsistent with the principles of equity and good conscience. If he can have protection at all, it must be because he is an unfortunate debtor, without the means to render that full justice to his creditor to which he was entitled, and where he has acted in good faith, and become the purchaser at a fair public sale.

In this case, it appears that the conduct of the appellant will not bear the test of these just principles. It is positively shown that he interfered to prevent bidding when the judgment was offered for sale, and that he gave an equivalent to induce a party intending to bid, not to do so. This tended directly to the injury of the plaintiff, who was entitled at least to a fair public sale, and free competition in bidding; for he was entitled to all the surplus of the proceeds of the sale after payment of the costs. But by the unconscientious interference of the appellant, the plaintiff was prevented from deriving any thing from the sale of his judgment, and it was sacrificed at a sum largely below what it was really worth.

It appears by the evidence, that the appellant had ample means to pay the balance due on the judgment, if he had been disposed to apply them to that purpose. The plaintiff was justly entitled to such an application, and it was the duty of the appellant not to withhold it; for it is the duty of every man, having the means, to pay his debts. Instead of doing this, by improper means he caused the plaintiff's judgment to be sacrificed; and if the sale were permitted to stand, he has really paid off his debt with about one hundredth part of the sum due upon it. Such a result could never be tolerated, unless where there can be no question of the entire good faith of the party.

Upon the merits of the case we are, therefore, of opinion that the decree is correct.

But it is insisted in behalf of the appellant, that the relief sought is barred by the 8th section of the statute of limitations of 1844. The relief sought is, that the sale be set aside, and the plaintiff have execution of the judgment. The statute referred to does not bar the right to issue execution upon a judgment, until the lapse of seven years from the time the last exe-

cution issued on such judgment; and it has been settled by this court, that where a cause of action or right existed previous to the passage of the act of 1844, the period of limitation therein prescribed commenced from the passage of that act.

The bill in this case was filed in 1849, and, consequently, the limitation prescribed had not then expired. The rights of the appellees to have their execution must have reference to that date, because the exercise of these rights was prevented by the conduct of the appellant.

The decree is affirmed with costs.